MARIAN L. O'DONOUGHUE vs. ARTHUR W. MOORS.

Norfolk.    January 11, 1911. — April 4, 1911.

Present: KNOWLTON, C. J., LORING, BRALEY, SHELDON, & RUGG, JJ.

*Nuisance*, By reason of snow or ice.   *Ice and Snow.   Landlord and Tenant.*

Where, in an action for personal injuries by reason of the alleged defective condi-
tion of the defendant's premises caused by snow and ice, there was no averment
or proof that the plaintiff had given notice to the defendant of the time, place
and cause of the injury within ten days as required by St. 1908, c. 305, but this
conclusive defense appeared not to have been brought to the attention of the
judge presiding at the trial, who had refused to order a verdict for the defend-
ant, the case here was considered on other grounds, on which the defendant's
exceptions were sustained.

A landlord is not liable to a tenant of an apartment in his building, and conse-
quently is not liable to a guest of such tenant, for injuries from a fall caused by
snow and ice on a granolithic walk in the court yard of the building leading to
a public street, where it is not shown that the landlord had taken upon himself
the duty of keeping the way clear of snow and ice, and it appears that the con-
dition of the walk was due entirely to a combination of rain, snow and freezing
weather, and was not due to any defect in the walk or in the building, or to
the snow being trampled upon.

TORT for personal injuries sustained by the plaintiff on De-
cember 20, 1908, in the manner described below.   Writ dated
March 20, 1909.

In the Superior Court the case was tried before *Sherman,* J.
The following facts were shown by the evidence.

The plaintiff lived with her sister, who was a tenant in the
apartment house known as Lenox Hall, No. 1 Richmond Court,
in the town of Brookline, which was the property of the defend-
ant.    The plaintiff's sister occupied an apartment under a lease
from the defendant dated September 1, 1907, which was in force
at the time of the accident and was introduced in evidence.

The defendant's building was constructed in the shape of a
horseshoe with a central court and a granolithic sidewalk lead-
ing from Beacon Street around the courtyard next to the wall
of the building and ending at another entrance from Beacon
Street.    The apartment in which the plaintiff lived was entered
through the first of a series of doors on the left hand side of the
horseshoe-shaped court, this door being about twenty-five feet
from the Beacon Street entrances.

The plaintiff testified that at the time she went to live in Richmond Court, on September 1, 1907, the granolithic walk was smooth and even and was free from ice and snow or other obstructions; that about November 11, 1908, the first snow of the winter fell; that on December 18, 1908, there was a snow storm, then a fall of rain, then snow and then freezing; that on December 19, 1908, as she was taking a carriage at the door of her sister's apartment, she noticed especially that the walk from the door to Beacon Street was covered with ice which was largely in a rough condition, with some smooth ice, but largely roughened; that she again observed it between two and three o'clock in the afternoon on December 19, and that it was then in the same condition as upon the morning of that day; that from December 18 down to the time of the accident she had seen nothing done to the sidewalk; that on December 20, at the time of the accident, the sidewalk was substantially in the same condition as when she saw it on December 19; that about two o'clock P. M. on the day of the accident, she started to go to the letter box on Beacon Street, "going very cautiously, walking cautiously, trying to find a place where I could put my feet with safety"; that when " about midway between the front door of Lenox Hall and the iron gateway, one of my feet gave way from this sort of hubbly condition of ice, which was roughened as a result of the slush, freezing and slight covering of snow in parts of the walk, one foot slipped a little, the other followed at once, and I came down full force on the end of my spine."

The plaintiff further testified that the walk was in a slippery condition, though not slippery so much as hubbly, that it looked dangerous, that she did not wear rubbers except in slush or rain but that she had rubber heels on her shoes at the time of the accident, that the " driveway was covered with snow, that the snow, on account of the freezing weather, had a light crust such as one could break through and wouldn't bear you," and that one could not have walked on the snow and ice in the driveway without going through.

The plaintiff further testified that " all the walk was in the condition above described on December 18, and that it was in the same condition on December 20 at the time she received her injuries."

There was no evidence of any custom or practice with regard to the cleaning or sanding of the walks; and the only evidence with regard to what was done after the storm on December 18 was the plaintiff's testimony that she saw nothing done to the sidewalk between that date and the date of the accident.

It was admitted by the counsel for the defendant that the defendant retained the care and control of the common sidewalks and driveway in Richmond Court and in the horseshoe-shaped courtyard of Richmond Court.

There was no evidence of any defect in the sidewalk except the accumulation of ice and snow upon it, in the condition described by the plaintiff, and there was no evidence that the snow and ice upon the sidewalk had accumulated through any defect in the sidewalk or the building.

The defendant offered no testimony, but at the conclusion of the evidence asked the judge to order a verdict for the defendant. The judge refused to do so, but required the plaintiff to stipulate that if the judge erred in submitting the case to the jury, judgment was to be entered for the defendant. The jury returned a verdict for the plaintiff in the sum of $1,500; and the defendant alleged exceptions.

The case was submitted on briefs.

*H. C. Sawyer*, for the defendant.

*F. Hurtubis, Jr.*, & *G. H. Power*, for the plaintiff.

Sheldon, J.   There was neither averment nor proof that the plaintiff had given notice to the defendant of the time, place and cause of her injury. St. 1908, c. 305.   This is fatal to the maintenance of her action. *Baird* v. *Baptist Society*, *ante*, 29. But as we doubt whether this point was brought to the attention of the judge at the trial, or was intended to be covered by the defendant's request that a verdict be ordered in his favor, we prefer not to decide the case upon that ground.

There was no evidence of the breach of any duty owed by the defendant to the plaintiff.   The defect upon the walk on which she fell was due entirely to natural causes, the combination of rain and snow with freezing weather.   He had made no agreement and there was nothing to show any duty on his part to guard against or to remedy such a condition.   Nothing had been done to the sidewalk since the storm that was testified to.   The

snow and ice had not been alternately trampled upon and frozen as in *Urquhart* v. *Smith & Anthony Co.* 192 Mass. 257, and any rough or hubbly condition that existed must be taken to have been due solely to the weather. There was no evidence of any custom or practice as to cleaning or sanding the walk, as there was in *Nash* v. *Webber,* 204 Mass. 419. The accumulation of ice and snow was not due to any defect in the walk itself or in the building.

There is nothing here to take the case out of the general rule that a landlord is not liable to his tenant (and the plaintiff has no greater rights than the tenant whose guest she was) for injuries caused by ice and snow in the manner here disclosed, unless it is shown, as it was not shown here, that he has taken upon himself the duty of keeping the way clear of ice and snow. *Woods* v. *Naumkeag Steam Cotton Co.* 134 Mass. 357. *Watkins* v. *Goodall,* 138 Mass. 533, 536. *Nash* v. *Webber,* 204 Mass. 419. *Hawkes* v. *Broadwalk Shoe Co.* 207 Mass. 117, 122.

The defendant's exceptions must be sustained; and following the plaintiff's stipulation, judgment must be entered for the defendant.    *So ordered.*